UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DATACOR, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09-CV-1123 (CEJ) |
| ) | |
| HERITAGE WARRANTY INSURANCE ) | |
| RISK RETENTION GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Heritage Warranty Insurance Risk Retention Group, Inc. (Heritage) to compel arbitration and stay the proceedings. Plaintiff Datacor, Inc., (Datacor) has filed an opposition to the motion and the issues are fully briefed.

Plaintiff was in the business of selling and administering extended warranty contracts for items such as electronics and appliances.[1] In order to cover its obligations for payments under the warranty contracts, plaintiff purchased insurance policies from third-party insurers. In 2003, plaintiff purchased a Contractual Liability Insurance policy from defendant. In conjunction with the insurance policy, the parties entered into an Administration Agreement pursuant to which defendant was obligated to reimburse plaintiff for any claims made under the extended warranty contracts. Plaintiff alleges that defendant failed to pay $483,140.53 in reimbursement requests. Plaintiff further alleges that defendant improperly removed plaintiff's name from a loss reserve account and prematurely withdrew profit-sharing payments from the account. In a petition filed in the Twenty-First Judicial Circuit Court of Missouri (St. Louis

---

[1]Plaintiff alleges that is has terminated operations.

County), plaintiff asserted claims for declaratory judgment, breach of contract, accounting, and injunctive relief. Defendant removed the matter to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under 28 U.S.C. § 1332.

The Administration Agreement includes (1) a provision requiring arbitration of disputes,[2] and (2) a choice-of-law provision directing that the Agreement is to be construed in accordance with the laws of Nebraska.[3] Defendant asks the Court to enforce the arbitration provision pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq*. Plaintiff contends that the Nebraska Uniform Arbitration Act renders the arbitration provision unenforceable. See Neb. Rev. Stat. § 25-2602.01(f)(4) (exempting "any agreement concerning or relating to an insurance policy" from the rule that a written agreement to arbitrate "is valid, enforceable, and irrevocable.") Plaintiff also asserts that application of the FAA is superseded in this instance by the McCarran-Ferguson Act, 15 U.S.C. §§ 1101 *et seq.*, which prevents inadvertent federal preemption of a state statute regulating the insurance industry.

**Discussion**

The Nebraska Uniform Arbitration Act provides as follows:

(b) A provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable,

---

[2]The arbitration provision, found at paragraph 24 of the Administration Agreement, states in relevant part:

If any dispute or difference of opinion shall arise with reference to the interpretation of this Agreement or the rights with respect to any transaction involved, the dispute shall be referred to three arbitrators or binding arbitration in accordance with the commercial arbitration rules and procedures of the American Arbitration Association. . .

[3]Defendant asserts that Nebraska law applies to the present issue, based upon the choice-of-law provision in the Agreement. Plaintiff assents for the purposes of this motion, contending that under either Nebraska or Missouri law "inverse preemption" bars application of the FAA.

except upon such grounds as exist at law or in equity for the revocation of any contract, if the provision is entered into voluntarily and willingly.

\* \* \*

(f) Subsection (b) of this section does not apply to:

\* \* \*

>    (4) . . . any agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract.

Neb. Rev. St. § 25-2602.01 (emphasis added).

The parties are in agreement that the insurance policy and Administration Agreement operate together and are dependent on each other. Defendant concedes that the Administration Agreement "concern[s] or relat[es] to an insurance policy" under § 25-2602.01(f)(4). According to defendant, however, the Nebraska statute is preempted by the FAA.

The FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA in order to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." American Bankers Ins. Co. of Florida v. Inman, 436 F.3d 490, 492-93 (5th Cir. 2006) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The FAA permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." Id. at 493; see also 9 U.S.C. § 4. The FAA's purpose is "to

move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983).

Although federal law ordinarily preempts conflicting state law, the McCarran-Ferguson Act provides a narrow exception to this rule for state laws governing the insurance industry. American Bankers Ins., 436 F.3d at 493. The McCarran-Ferguson Act preserves the traditional role of state insurance regulation by providing, in pertinent part, that no federal statute "shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." Saunders v. Farmers Ins. Exchange, 537 F.3d 961, 963 (8th Cir. 2008) (quoting 15 U.S.C. § 1012(b)). "A claim only incidentally involving insurance is insufficient to trigger application of the McCarran-Ferguson Act. Rather, the claim must involve a state law enacted with the specific purpose of regulating the business of insurance in order to trigger application of the McCarran-Ferguson Act." Sofonia v. Principal Life Ins. Co., 465 F.3d 873, 880 (8th Cir. 2006).

"Inverse-preemption operates to bar application of the FAA if (1) the FAA does not specifically relate to the business of insurance, (2) the FAA would invalidate, impair, or supersede [§ 25-2602.01], and (3) [§ 25-2602.01] was enacted for the purpose of regulating the business of insurance." Standard Security Life Ins. Co. of New York v. West, 267 F.3d 21 823 (8th Cir. 2001) (discussing provision of Missouri Arbitration Act exempting insurance contracts). Defendant contends that the Nebraska statute does not satisfy the second and third factors and that the Court should apply the FAA.

Under the second factor the Court asks whether the FAA invalidates, impairs or supersedes § 25-2602.01. "Invalidate" means to "render ineffective, generally without providing a replacement rule or law." Humana Inc. v. Forsyth, 525 U.S. 299, 307 (1999). "Supersede" means to "displace (and thus render ineffective) while providing a substitute rule." Id. In construing the term "impair," the Supreme Court explained that "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." Id. at 310. The Nebraska Uniform Arbitration Act provides that arbitration agreements are "valid, enforceable, and irrevocable" except when the agreement concerns or relates to an insurance policy. § 25-2602.01(f)(4). The application of the FAA to enforce the parties' arbitration agreement would render the statute ineffective and thus invalidate it. See American Bankers, 436 F.3d at 493 (FAA invalidates Mississippi's prohibition on arbitration requirements in uninsured motorist coverage); Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co., Inc., 969 F.2d 931 (10th Cir. 1992) (FAA invalidates, impairs or supersedes comparable Kansas arbitration statute). The second inverse-preemption factor is satisfied.

The third factor asks whether § 25-2602.01 was enacted for the purpose of regulating insurance. To make this determination, the Court first asks whether "from a common-sense view of the matter" the state law regulates insurance. UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 367 (1999) (quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 (1985)). Second, the court considers three factors to determine whether the state statute fits within the business of insurance: (1) whether the statute has the effect of transferring or spreading a policyholder's risk; (2) whether the statute is an integral part of the policy relationship between the

insurer and the insured; and (3) whether the statute is limited to entities within the insurance industry.  Id.  These factors are "relevant," not "required," and are not "separate essential elements . . . that must each be satisfied."  Id. at 373.

Section 25-2602.01(f)(4) explicitly exempts arbitration provisions in insurance contracts from the general policy of enforcing such provisions and common sense thus indicates that the statute regulates the business of insurance.  With respect to the UNUM Life factors, the statute affects the policyholder's risk "by introducing the possibility of jury verdicts into the process of resolving disputed claims."  Standard Security Life Ins., 267 F.3d at 824 (addressing Missouri Arbitration Act's exemption of arbitration provisions in insurance contracts).  The statute also regulates an integral part of the insurer-insured relationship by invalidating an otherwise mandatory insurance contract term thus subjecting all disputes to the possibility if a jury trial.  Id.  Defendant contends that the statute is not limited to entities within the insurance industry because it also exempts tort and employment claims from arbitration.  Resolution of this point is not essential as it is not necessary to satisfy all three UNUM Life factors.  UNUM Life, 526 U.S. at 373  ("[W]e reject UNUM's assertion that a state regulation must satisfy all three McCarran-Ferguson factors in order to 'regulate insurance.'")  Two out of the three UNUM Life factors clearly support a determination that § 25-2602.01(f)(4) regulates insurance.  Thus, the McCarran-Ferguson factors are satisfied.

In summary, the McCarran-Ferguson Act protects state laws regulating the business of insurance from inadvertent preemption by federal statutes that do not regulate insurance.  Nebraska has exempted from the rule favoring enforcement of agreements to arbitrate those arbitration provisions appearing in insurance contracts.  Under the McCarran-Ferguson Act, application of the FAA to override Nebraska's

exemption and compel arbitration is precluded and defendant's motion must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel arbitration and stay proceedings [Doc. #7] is **denied**.

*(signature)*
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 16th day of December, 2009.